UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, ) <br> MARJORIE PRATHER, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BROOKDALE SENIOR LIVING ) <br> COMMUNITIES, INC., et al, ) <br> ) <br> Defendants. ) | CIVIL CASE NO.: 3:12-cv-00764 <br><br> JUDGE ALETA A. TRAUGER |

**THE UNITED STATES' STATEMENT OF INTEREST REGARDING
DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**

The United States submits this Statement of Interest, pursuant to 28 U.S.C. § 517, to address arguments in Defendants' Memorandum in Support of Motion to Dismiss the Third Amended Complaint (DE 103) regarding the import of the Supreme Court's decision in *Universal Health Services v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), on the application of the materiality element of the False Claims Act to the allegations in Relator's Third Amended Complaint (TAC).

The United States submits this brief to respond to Defendants' argument that the TAC does not sufficiently plead materiality because, Defendants contend, (1) the certification timing requirements in 42 C.F.R. § 424.22(a)(2) are not labeled a condition of payment, as set forth in section I.B.1. of Defendants' Memorandum; and (2) the TAC does not allege that the Government has ever denied claims based on the timing of physician signatures on home health certifications, as set forth in section I.B.2 of Defendants' Memorandum. The United States

takes no position at this time as to the overall merits of this case or the sufficiency of the Relator's TAC.

I. **The Supreme Court's *Escobar* Decision Clarified That a Variety of Factors Are Relevant to the FCA's Materiality Inquiry and That No One Factor Is Automatically Dispositive**

The *Escobar* decision reaffirmed that the "term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Escobar,* 136 S. Ct. at 2002. The Court explained that the focus of the materiality inquiry is "the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Id.* at 2002. The Court further held that this inquiry can be undertaken from either the perspective of a "reasonable person" or the particular defendant: a matter is material (1) "'if a reasonable [person] would attach importance to it in determining [a] choice of action in the transaction'"; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter 'in determining [a] choice of action,'" regardless of whether a reasonable person would do so. *Id.* at 2002-2003 (quoting in part Restatement (Second) of Torts § 538, at 80)).

The Supreme Court explained that in applying this standard, the label attached to a particular rule, regulation, or contract term may be relevant, but is not determinative. Thus, the Court rejected the false dichotomy invoked by some courts between a so-called condition of participation and a condition of payment: "Section 3729(a)(1)(A) imposes liability on those who present 'false or fraudulent claims' but does not limit such claims to misrepresentations about express conditions of payment." *Id.* at 2001 (c*iting United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1268 (D.C. Cir. 2010)); *see also id.* at 2003 ("the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically

2

Case 3:12-cv-00764   Document 107   Filed 05/03/17   Page 2 of 11 PageID #: 1946

dispositive"). Instead, the Supreme Court identified a variety of additional factors bearing on the materiality inquiry, including, whether the violation goes to the "essence of the bargain," *id.* at 2003 n.5 (quoting *Junius Constr. Co. v. Cohen*, 257 N.Y. 393, 400 (1931)), whether the violation is significant or "minor or insubstantial," *id.* at 2003, and the actions the government took in this or other cases where the government had knowledge of similar violations. *Id.* at 2003-2004. In addition, the Court stressed that no one factor is automatically dispositive. *Id.* at 2001 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 39 (2011) for the proposition that "materiality cannot rest on a 'single fact or occurrence as always determinative'"); *see also United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 109 (1st Cir. 2016) (on remand from the Supreme Court, the First Circuit stated that "*Escobar* makes clear that courts are to conduct a holistic approach to determining materiality in connection with a payment decision, with no one factor being necessarily dispositive."), and *United States v. Quicken Loans, Inc.*, 2017 WL 930039, *17 (E.D. Mich, March 9, 2017) ("Declining to provide any sort of bright-line test for materiality, the Supreme Court [in *Escobar*] endorsed a more holistic approach[.]"). Thus, materiality is a flexible standard that can be met in a variety of circumstances. *Id.* at 2001-03.

## II.     The Regulatory Scheme Supports False Claims Act Materiality

Defendants concede that the regulatory requirement that a physician certify a patient's eligibility for home health services is material to the government's decision to pay for Medicare home health services. (DE 103 at 12, PageID # 1590.) The regulation is clear that "Medicare Part A or Part B pays for home health services only if a physician certifies and recertifies the content specified in paragraphs (a)(1) and (b)(2) of this section, as appropriate." 42 C.F.R. § 424.22. Yet, Defendants seek refuge from this requirement by trying to differentiate between

3

the subparts of 42 C.F.R. § 424.22 that specify the necessary contents of the certification and those that specify the timing of when the certification must occur. Arguing that only the content subparts (and not the timing subparts at issue in the TAC) are expressly designated as conditions of payment, Defendants assert that the timing subparts are not material to the government's payment decision: "The language in § 424.22 provides a clear indication that the signature-timing requirement is not material because the Government did not 'expressly identify' § 424.22(a)(2) as a condition of payment. *Escobar*, 136 S. Ct. 2003." (DE 103 at 12; PageID # 1590).

Defendants' reliance on *Escobar* for this proposition is curious. Although the above-quote in their Memorandum suggests that the *Escobar* decision imposed a bright-line rule that a statutory, regulatory, or contractual requirement must be "expressly identified" as a condition of payment to be considered a material requirement, *Escobar* in fact held the exact opposite. *Id.* at 2001. As outlined above, the *Escobar* Court rejected the false dichotomy invoked by some courts between a so-called condition of participation and a condition of payment: "We further hold that False Claims Act liability for failing to disclose violations of legal requirements does not turn upon whether those requirements were expressly designated as conditions of payment. Defendants can be liable for violating requirements even if they were not expressly designated as conditions of payment." *Id.* at 1996. Accordingly, Defendants' hyper-technical parsing of 42 C.F.R. § 424.22 to suggest that the timing requirements embedded in the regulation are not material because they are not "expressly designated" as a condition of payment contravenes the approach adopted by the Supreme Court in *Escobar*.

Moreover, a plain reading of this regulatory provision belies the Defendants' argument and supports a finding of materiality on at least two of the materiality factors discussed in

4

*Escobar*.  The government promulgated this regulation to make clear that compliance with its physician certification requirement is fundamental (and therefore material) to its payment decision for Medicare home health care services.  As articulated in the government's prior statement of interest (DE 66 at 2-6, PageID # 859-863), the regulation concerning physician certifications of a patient's eligibility for Medicare's home health benefit is both labeled a condition of payment and goes to the "essence of the bargain," *Escobar* at 2003 n.5, between a home health care provider and the Medicare program.  Part 424 of Title 42 of the Code of Federal Regulation is titled "Conditions for Medicare Payment" and the text of this specific provision clearly concerns a condition of Medicare *payment*, stating that "Medicare Part A or Part B *pays* for home health services *only if* a physician certifies and recertifies the content specified in paragraphs (a)(1) and (b)(2) of this section, as appropriate." 42 C.F.R. § 424.22 (emphasis added).  Title 42 C.F.R. § 424.22(a)(2) imposes rules related to timing and signature for that certification to be valid: "The certification of need for home health services must be obtained at the time the plan of care is established or as soon thereafter as possible and must be signed and dated by the physician who establishes the plan."   The timing requirement is § 424.22(a)(2) is no suggestion or description of best practice, but instead states that the certification "**must**" be obtained within the specified time period.  Otherwise, it would be invalid and a home health care provider would not have the requisite certification that § 424.22 makes clear must be obtained to receive Medicare payment for home health services.  The statutory language is clear that the timing requirements are fundamental to the certification requirement, which in turn is a fundamental part of the bargain between a home health care provider and the Medicare program.  *See, e.g.*, *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 838 F.3d 750, 756 (6th Cir. 2016) ("These certifications provide a forward-

looking projection of medical need at the time the beneficiary's plan of care is established, ensuring that a patient receives Medicare services only to the extent she needs them.") (internal citations omitted).

## III. *Escobar* Does Not Require an FCA Plaintiff to Plead Prior Government Denials of Payment for Similar Violations

Defendants seek dismissal of Relator's TAC, in part, because "the TAC does not allege that CMS has ever denied any claims – whether submitted by Brookdale or by other providers – based on a violation of § 424.22(a)(2)." (DE 103 at 14, PageID # 1592.) There is no question that, in *Escobar*, the Supreme Court indicated that how the government has treated the same or similar violations is a relevant factor to the materiality inquiry. *Escobar*, 136 S. Ct. at 2003. Nonetheless, this is just one of the several non-dispositive materiality factors delineated by the Supreme Court. Accordingly, the implication in Defendants' Memorandum that the United States (or a relator in a declined case such as this) must plead prior government denials of payment in order to survive a motion to dismiss is plainly incorrect. Nor does *Escobar* require the United States (or a relator) to demonstrate that the government *would* have denied payment if it had known of the defendants' conduct (the outcome standard of materiality), *see id.* at 2002; *Kungys v. U.S.*, 485 U.S. 759, 771 (1988), or even that the government *could* have denied payment. *Escobar*, 126 S. Ct. at 2004.

A closer examination of the Supreme Court's discussion of this factor patently demonstrates that *Escobar* did not create such a dispositive pleading requirement:

> [P]roof of materiality **can include, but is not necessarily limited to**, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual

6

> knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Escobar*, 136 S. Ct. at 2003–04 (emphasis added). The Supreme Court thus found that proof that the government has refused to pay similar claims is one of several potential forms of proof of materiality. Moreover, the decision is clear that the government's decision to pay claims despite violations of a regulatory requirement is only evidence of a lack of materiality where the government has "actual knowledge" of the violation. *Id*. at 2003-04. This type of evidentiary inquiry is not normally appropriate on a motion to dismiss, where the sole question is whether the complaint plausibly alleges a violation of the statute. Absent an opportunity for discovery, it is not reasonable to expect or require detailed allegations from a *qui tam* relator concerning the government's "actual knowledge" and the resulting pattern of action (or inaction) with respect to the types of violations alleged. Here, there are no allegations in the Relator's TAC that the Centers for Medicare and Medicaid Services (CMS) (the relevant government decisionmaker) knew of the violations alleged here at the time it paid for claims for home health services. Further, there are no allegations in the TAC that CMS paid a claim for home health services despite notice at the time that a home health provider had violated the physician certification timing requirements in 42 C.F.R. § 424.22(a)(2).

More fundamentally, even where the government has actual knowledge of the defendant's wrongful conduct and continues to pay claims, such action does not necessarily undermine a materiality finding because there are many good reasons, including important public health and safety considerations, why the government might continue to pay claims in such circumstances. *See United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 917 (observing that the government might have good reason to pay despite the violation because the contract is "advantageous to the government" or is too far along to

7

terminate without excessive costs). The government is charged with ensuring the delivery of health care to many millions of Americans enrolled in Medicaid, Medicare, and other health insurance programs. While there are considerations in which the government may properly halt payments in face of fraudulent conduct, such decisions are necessarily tempered by the need to ensure adequate access to health care, including considerations such as the unavailability of similar services from different providers. As a result, courts have long held that FCA liability is "not automatically exonerated by any overlapping knowledge by government officials." *United States ex rel. Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1156 (2d Cir. 1993). Likewise, courts have recognized that "Congress intended to allow the government to choose from a variety of remedies, both statutory and administrative, to combat fraud." *United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 4905*, 688 F.3d 410, 414-15 (8th Cir. 2012). Nothing in *Escobar* suggests that the government must always initiate proceedings to recoup payments previously made in order to establish that certain types of violations are material to payment.

Under *Escobar* the governments' failure to withhold payment upon learning of regulatory violations is not a dispositive factor in determining the materiality of those violations. Just as the Court explained that "the Government's decision to expressly designate a provision as a condition of payment is relevant but not automatically dispositive," it also recognized that evidence that "the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated" is not dispositive with respect to materiality. *See Escobar*, 136 S. Ct. at 2003-04 (stating that such a showing would constitute "strong evidence" that a violation is not material). In thus recognizing that the public interest may require the government to pay certain claims despite knowledge of material violations and identifying a variety of factors relevant to the materiality inquiry, the Supreme Court made at least one thing

8

clear: "materiality cannot rest on a single fact or occurrence as always determinative." *Id.* at 2001.

Thus, to the extent that it suggests that Relator's TAC must be dismissed based on the failure to plead prior payment denials by the government based on violations of the operative regulation, the approach taken in Defendants' Memorandum is inconsistent with the multi-factor inquiry endorsed by the Supreme Court for assessing materiality. Since *Escobar*, courts have rejected similar attempts to dismiss pleadings for failure to allege prior government denials of payment. In subsequent proceedings in *Escobar* itself, the relator's complaint was not dismissed despite failing to plead any prior government payment denials for similar violations to the ones alleged in that case. *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 112 (1st Cir. 2016) ("[T]here is no evidence in the complaint that MassHealth, the entity paying Medicaid claims, had actual knowledge of any of these allegations (much less their veracity) as it paid UHS's claims. Because we find no evidence that MassHealth had actual knowledge of the violations at the time it paid the claims at issue, we need not decide whether actual knowledge of the violations would in fact be sufficiently strong evidence that the violations were not material to the government's payment decision so as to support a motion to dismiss in this case."). Courts within the Sixth Circuit have also rejected the argument advanced in Defendant's Memorandum that pleading that the government has previously denied payment for similar allegations is required to demonstrate materiality at the pleading stage. In *United States v. Quicken Loans*, a district court denied a defendant's motion to dismiss despite the fact that the government's prior treatment of similar allegations was not alleged in the complaint. *United States v. Quicken Loans*, 2017 WL 930039 (E.D. Mich. March 9, 2017) ("Nor is there any allegation that Quicken knew that the Government consistently refused to pay claims in the mine run of cases based on

9

noncompliance with the certification requirement. However, there is also no evidence to suggest that HUD paid the claims at issue in this case despite actual knowledge of the violations."). As is appropriate in this case as well, these courts recognized that the *Escobar* decision deemed prior government action as one of several factors to be considered in a holistic materiality analysis rather than as a requirement that must be pled in order to survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to reject the Defendants' arguments that are addressed in this Statement of Interest. The United States takes no position on other arguments made. The United States also asks that if the Court dismisses the relator's Complaint because it is inadequately plead that it make such dismissal without prejudice to the United States.

Respectfully submitted,

JACK SMITH
Acting United States Attorney
Middle District of Tennessee

By:  s/ Mark H. Wildasin
MARK H. WILDASIN (BPR 015082)
Assistant U.S. Attorney
Suite A-961, 110 9th Avenue South
Nashville, Tennessee 37203-3870
Telephone: (615) 736-5151
Fax: (615) 401-6626
Email: Mark.Wildasin@usdoj.gov

MICHAEL D. GRANSTON
SARA McLEAN
BRADLEY M. BRINKMAN
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-2917

10

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed and served upon the following counsel via the Court's electronic filing system if registered, otherwise by First Class mail prepaid, on May 3, 2017:

Patrick M. Barrett, III
Barrett Law Office, PLLC
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215

William Michael Hamilton
Provost Umphrey Law Firm, LLP
4205 Hillsboro Pike, Suite 303
Nashville, TN 37201

Brian Roark
Angela Bergman
Bass Berry & Sims, PLC
150 Third Ave., South, Suite 2800
Nashville, TN, 37201

                                                  s/ Mark H. Wildasin
                                                  MARK H. WILDASIN
                                                  Assistant U.S. Attorney